IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DAVID W. MORRIS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-089 |
| | ) | |
| VERONICA STEWART, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case filed pursuant to 42 U.S.C. § 1983, concerning events occurring at Telfair State Prison ("TSP") in Helena, Georgia. The Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 40), and Defendant's motion for summary judgment be **DENIED**, (doc. no. 45).

**I.      PROCEDURAL BACKGROUND**

Plaintiff submitted his amended complaint on November 21, 2022, and, because he is proceeding IFP, the Court screened the amended complaint. (Doc. nos. 14-17.) On December 9, 2022, the Court issued a Report and Recommendation ("R&R") recommending dismissal of Defendant Ward, along with Plaintiff's official capacity claim for monetary damages against Defendant Stewart. (Doc. no. 15.) The Court directed service of process on Defendant Stewart in her individual capacity based upon Plaintiff's allegations of excessive use of force. (Doc. no. 17.) On January 4, 2023, United States District Judge Dudley H. Bowen, Jr. adopted the

R&R.  (Doc. no. 22.)

Defendant timely filed her answer to the amended complaint on December 29, 2022, (doc. no. 19), and the Clerk issued a Scheduling Notice, (doc. no. 20).  The case proceeded through the standard discovery period, during which defense counsel deposed Plaintiff.  (Doc. no. 45-1, Ex. A: Morris. Dep.)  On May 26, 2023, Plaintiff filed a motion for summary judgment, (doc. no. 40), and on June 26, 2023, Defendant filed a motion for summary judgment, (doc. no. 45).  The Clerk notified Plaintiff of Defendant's motion in satisfaction of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*).  (Doc. no. 46.)

In accordance with Local Rule 56.1, Defendant submitted a Statement of Material Facts ("SMF") in support of her summary judgment motion.  (Doc. no. 45-3.)  Plaintiff timely filed his responsive statements, however, Plaintiff's statements do not respond to each fact in Defendant's SMF and consist of conclusory allegations contending Defendant is lying.  (Doc. nos. 47-48, 50); see Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding summary judgment appropriate where inmate produced nothing beyond "his own conclusory allegations" challenging actions of defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."). Because Plaintiff did not contradict Defendant's factual assertions with any affidavits or other evidence, the Court deems admitted all portions of Defendant's SMF that have evidentiary support in the record.  See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).

2

However, this does not automatically entitle Defendant to summary judgment. Defendant continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review Defendant's representation of the record, including Plaintiff's sworn deposition testimony "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

Plaintiff's summary judgment motion relies solely on the assertion Defendant is lying because Defendant Stewart claims she "didn't even pepper spray [him]." (Doc. no. 40, pp. 1-3.) Plaintiff cites no record evidence, does not provide his own statement of undisputed material facts, and provides no legal arguments. (See generally id.)

## II.   FACTUAL BACKGROUND

During his deposition, Plaintiff described the events at issue on April 6, 2022, as follows:

> That morning they were doing morning inspection. Deputy Warden Stewart, Captain Fuller, CERT Officer Wilcox, Lieutenant Tillman, CERT Officer Mackenzie, and another CERT officer came in to -- to do the morning inspection. They were picking up coats and blankets that day from the previous winter, so that morning, of course, you know, Ms. Stewart was getting on to somebody about something that didn't really involve me. It had nothing to do with me. And once they do that, you have to say, sir, yes, sir, and you have to holler it like you're in the military basically.
>
> And to be totally honest, that morning I was -- I was -- you know, I -- I was distraught. So -- so when it said say, sir, yes, sir, instead of saying, sir, yes, sir, I say, yeah, yeah. So in that sense, I was in the wrong for saying, yeah, yeah. At that point, Deputy Warden Stewart told me to go towards the door. I walked towards the front door. She had pulled Captain Fuller's Taser from his belt. She was aiming her Taser at me, and I was walking towards the front door.

> At that time, I went toward the front door. I had a broken orthopedic wire in my left wrist, so I had a wrist brace on my left wrist that I had been wearing for – for months previous to that. I had a profile for that wrist brace. And this is all referenced in my medical records. So, well, I went towards the front door. The – the unidentified officer, CERT officer, handcuffed my right hand, and then when he went -- at that point, Ms. -- Ms. Stewart had come around me on this side, but little did I know that she was holding a can of pepper spray.
>
> At that point, I was -- my right hand was handcuffed. When he went to twist my left hand around to handcuff -- let me back up a second. I was told don't say anything. Don't speak. Don't open your mouth. Captain Fuller, he reiterated that by saying, don't say shit. Excuse my language. So at that point, when he handcuffed my when he handcuffed my right arm, little did I know that Ms. Stewart was coming up beside me on my left side. This is all on video.
>
> So when he twisted my left arm over to handcuff my left arm, as soon as he twisted my left arm around and went to cuff it, I said, please don't twist my wrist, because I was naturally -- it -- it jarred me when he grabbed my wrist and twisted it like that, because of the orthopedic wire that was already broken in my wrist. So I had a very sensitive left wrist. When that happened I said don't twist my wrist.
>
> At that point Ms. Stewart came from behind me, this close to my face, and sprayed me with a can of pepper spray probably about that big, and sprayed me with pepper spray. Now, at this time, both hands are behind my back, and I'm subdued. I'm not being aggressive. My hands aren't flailing around, and so at that point I was pepper sprayed. And that's -- that's the basis of my lawsuit.

(Morris. Dep., pp. 9-10.) Plaintiff described the handcuffing in greater detail:

> Answer: Ms. Stewart is pointing the Taser at me as I walk off the yellow line. As I go toward the CERT officer, Ms. Stewart is out of my sight at this point. She's behind me. So I'm walking toward the front door. She's out of my vision at this point. So I don't see what she's doing between the walk -- from when I started walking towards him, from there till I got to him. Ms. Stewart is out of my line of sight.
>
> Question: Okay. And -- but the -- the officer that's in your line of sight is the CERT officer who's -- who's putting the handcuff on you?
>
> Answer: Correct.
>
> Question: Okay. And he's putting -- he puts one cuff on one wrist, and he's going to put the other hand in the cuff, and that's when you -- you

4

> reacted to that, you say, because you say you've got a -- a bad wrist?
>
> Answer: Yes, sir. As soon as he -- as soon as he twisted my left wrist around and clipped the cuff on it, I said, don't twist my wrist. That's when she came around from behind, from my blind side, and sprayed me. [ . . .] So at that point -- at that point, I'm handcuffed.

(Id. at 15.) Plaintiff testified Defendant sprayed him "a split second after" he asked the guard not to twist his wrist. (Id. at 16.) After being pepper sprayed, Plaintiff was taken to segregation and examined by Nurse Kimberly, who informed Plaintiff he was fine. (Id. at 16; SMF ¶¶ 12-14.) Plaintiff concedes he experienced no permanent or lasting effects. (Morris Dep., pp. 28-32; SMF ¶¶ 15-16.)

Officers issued a disciplinary report, but it was dismissed because prison officials did not serve Plaintiff with the report within twenty-four hours of the incident. (SMF ¶ 8; doc. no. 45-2.) Plaintiff claims Nurse Kimberly completed an assessment, but the form is unsigned, indicates Plaintiff gave no response regarding a description of the force applied, and shows Plaintiff suffered no injury from the pepper spray. (Doc. no. 40, p. 4; SMF ¶¶ 14-16.)

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. Cty. of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

5

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case [. . . ], no reasonable jury could find for the nonmoving party." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608.  The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by affidavits or as otherwise provided in Federal Rule Civil Procedure 56.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.      A Jury Must Determine Whether Defendant Acted Maliciously and Sadistically to Cause Harm to Plaintiff**

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353,

6

1374 (11th Cir. 1999). To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id. *De minimi*s uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted).

However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). That is, the extent of a plaintiff's injury may be considered, but it is not the central consideration, and "significant injury" is not required to maintain an excessive force claim. Id. at 37. Thus, the "core judicial inquiry" for an Eighth Amendment excessive force claim is not based on the extent of Plaintiff's injury, but rather on "the nature of the force" used, *i.e.*, "whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Id. at 39.

Subjectively, Plaintiff must show the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied

7

for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322). Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375.

Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*). For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate

coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

"Pepper spray is an accepted non-lethal means of controlling unruly inmates," and "[p]rison guards may use force when necessary to restore order . . . ." Danley v. Allen, 540 F.3d 1298, 1307, *overruled on other grounds as recognized in* Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010).  The Eleventh Circuit has recognized the use of sprays with inflammatory properties may be a reasonable alternative to escalating a potentially dangerous situation without causing permanent injury.  See Danley, 540 F.3d at 1307-08; Burke v. Bowns, 653 F. App'x 683, 696 (11th Cir. 2016) (*per curiam*).  However, the temporary pain caused by pepper spray may still be constitutionally cognizable "where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm . . . ." Thomas v. Bryant, 614 F.3d 1288, 1311 (11th Cir. 2010).

"Not every instance of inmate resistance justifies the use of force, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions.'" Rivera v. McNeal, No. CV 1:19-1037-KD-N, 2021 WL 1151558, at *6 (S.D. Ala. Feb. 24, 2021) (quoting Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002)), *adopted by* 2021 WL 1151533 (S.D. Ala. Mar. 25, 2021).  Thus, while "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders[,]" the analysis still requires "an assessment of 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them[.]'" Danley, 540 F.3d at 1307-08 (quoting Whitley, 475 U.S. at 321).

Construing the facts in Plaintiff's favor, reasonable jurors could find Defendant's use of pepper spray was unnecessary, unreasonable, and applied maliciously or sadistically rather than in a good-faith effort to maintain or restore discipline. Indeed, reasonable jurors could find there was no need for application of force because Plaintiff was not resisting the officers' commands or handcuffing and, instead, merely uttered one sentence to request more delicate handling of his injured wrist, which resulted in immediate pepper spraying. Furthermore, reasonable jurors could find Plaintiff's behavior was a minimal disturbance with little threat to prison safety or order. Indeed, even Plaintiff's original infraction that led to the handcuffing was minor. Plaintiff simply uttered "yeah, yeah" instead of the required "sir, yes sir," and as soon Defendant told him to go to segregation, he complied by walking toward the front door. As the Eleventh Circuit recently explained, "a prisoner initiating a verbal altercation does not give prison guards carte blanche to use force sadistically and maliciously." Williams v. Radford, 64 F.4th 1185, 1197 (11th Cir. 2023).

Courts within the Eleventh Circuit routinely hold such circumstances constitute excessive use of force. See, e.g., Simmons v. Williams, No. 6:14-CV-111, 2017 WL 347988, at *19 (S.D. Ga. Aug. 9, 2017) ("[U]se of pepper spray was unnecessary, as Plaintiff was attempting to comply with the search at the time this Defendant released pepper spray in his cell."); Danley, 540 F.3d at 1309 ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."); Williams v. Rickman, 759 F. App'x 849, 852 (11th Cir. 2019) (*per curiam*) ("[U]se of pepper spray was not penologically justified—because Mr. Williams was not misbehaving—and constituted excessive force.").

Defendant contends she was justified in taking any indication of insubordination by

10

Plaintiff seriously because prison officials need not wait until disturbances reach dangerous proportions before responding, citing Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990). (Doc. no. 45, pp. 5-6.)  However, the Eleventh Circuit recently rejected nearly all of Bennett in Williams v. Radford.  64 F.4th at 1198.  Nor are the facts of Bennett similar to those *sub judice*.  Indeed, the Bennett court concluded "the need for the use of force is established by the undisputed evidence that Bennett created a disturbance. As a result of this incident, Bennett pleaded guilty to disciplinary charges for insubordination, for failure to follow instructions, and for disrupting the count of inmates." 898 F.2d at 1533.

The pepper spray cases cited by Defendant are materially distinguishable.  (Doc. no. 45, p. 6.); Burke, 653 F. App'x at 696 (affirming district court's grant of summary judgment finding no excessive force when officers pepper sprayed inmate after fifteen minutes of continual requests to submit to handcuffing while inmate shouted expletives); Thompson v. Carani, No. 1:06-CV-099, 2008 WL 5088541, at *1-*2 (S.D. Ga. Dec. 2, 2008) (holding no excessive force when officer pepper sprayed inmate after calling officer profane names, ignoring repeated orders, and refusing to move from bed); Williams v. Harris, No. 1:19-CV-165, 2020 WL 7330641, at *2 (S.D. Ga. Dec. 10, 2020) (holding no excessive force when officers pepper sprayed inmate after intentional flooding of cell, continual refusal to cooperate with orders, and refusal to give up razor blade).

Nor is Defendant entitled to summary judgment on the basis of qualified immunity.  A qualified immunity defense is not available for excessive force claims.  Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002).  Use of excessive force is clearly established to be a violation of the Constitution.  Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 319.  Because there is "simply no room for a qualified immunity defense when the plaintiff alleges such a

violation," the sole question is "whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." Skrtich, 280 F.3d at 1301. Plaintiff has satisfied this burden.

For the above reasons, Defendant's summary judgment motion should be denied. Plaintiff's summary judgment motion should also be denied because it provides no evidence or legal arguments and relies on the conclusory assertions Defendant is lying, Plaintiff was pepper sprayed, and the spraying constituted excessive force. (Doc. no. 40, pp. 1-3); see Loc. R. 56.1; Fed. R. Civ. P. 56. Plaintiff does not reference any evidence and does not attempt to show the material facts are not in dispute. Clark, 929 F.2d at 608 (The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.").

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 40), and Defendant's motion for summary judgment be **DENIED**, (doc. no. 45). Should the presiding District Judge adopt this Court's recommendation, this case shall proceed to trial in due course.

SO REPORTED AND RECOMMENDED this 19th day of September, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA